UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

U.S. DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

JUL 12 2024

FILED

| UNITED STATES OF AMERICA | ) INFORMATION NO. |
|---|---|
| v. | ) 18 U.S.C. § 1343 |
| KAMEKA V. BAUSLEY | ) Wire Fraud |

CR124-043

THE UNITED STATES ATTORNEY CHARGES THAT:

At all times relevant to this Information:

### General Allegations

1. Defendant KAMEKA V. BAUSLEY (hereinafter, "BAUSLEY") was a resident of Augusta, Georgia, and was employed by the United States Postal Service. BAUSLEY also operated businesses, known as "Meek Meeks Treats" and "Meek-Meek's Meals & Tipsy Treats," from her residence.

2. The Coronavirus Aid, Relief, and Economic Security Act ("CARES" Act) was a federal law enacted on March 27, 2020, designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of forgivable loans to small businesses for job retention and other certain expenses, through a program referred to as the Paycheck Protection Program ("PPP").

3. To obtain a PPP loan, a qualifying business was required to submit a PPP loan application signed by an authorized representative of the business. The

PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan. In the PPP loan application, the applicant (through its authorized representative) was required to state, among other things: (a) its average monthly payroll expenses; and (b) its number of employees. If the applicant had no employees other than the owner, the applicant was required to provide the gross income amount from a 2019 or 2020 IRS Form 1040, Schedule C (Profit or Loss from Business). These figures were used to calculate the amount of money the small business was eligible to receive under the PPP. Additionally, the applicant was required to certify that they were in operation as of February 15, 2020. The applicant was also required to certify that the information in the application was true and correct in all material respects and acknowledged that knowingly making false statements to obtain a loan was punishable under federal law.

4. A PPP loan application was received and processed, in the first instance, by a participating lender. If a PPP loan application was approved, the participating lender funded the PPP loan using its own monies and wired the loan proceeds to the account designated by the applicant. Repayment of the PPP loan was guaranteed by the Small Business Administration ("SBA"), an executive branch agency of the United States. Data from the application, including information about the borrower, the total amount of the loan, the listed number of employees, and the gross income amount, was transmitted by the lender to SBA in the course of processing the loan.

5. PPP applications are received in cloud-based platforms. The location of

the server through which the PPP application is submitted is based on the date the application was processed by the SBA and the application number. During the period relevant to this Indictment, all PPP applications were received through the Summit platform, a cloud-based platform utilizing the AWS GOV cloud servers located in Sterling, Virginia. PPP lenders submitted disbursement details into the SBA E-Tran system in Sterling, Virginia. E-Tran transmitted the PPP processing fee to the lender through the United States Treasury's Financial Management System (FMS) to the Treasury. The primary server for FMS is located in Sterling, Virginia.

6. In addition to the PPP loan program, the CARES act authorized the Economic Injury Disaster Loan ("EIDL") program. EIDL is an SBA program that provided low-interest funding to help small businesses recover from the economic impacts of the COVID-19 pandemic. EIDL funds are not forgivable and must be repaid.

7. To obtain an EIDL, an applicant must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was the year preceding January 31, 2020. The applicant must also certify that all the information in the application is true and correct.

8. The amount of an EIDL, if the application is approved, is determined based, in part, on the information provided in the application about employment, revenue, and cost of goods, as set forth above. Any funds issued under an EIDL or

advance are issued directly by the SBA. EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

9. In addition to applying for an EIDL, an applicant could request and then receive up to $10,000 in an EIDL "advance" based on the number of employees claimed. The EIDL "advance" was disbursed in amounts of $1,000 per claimed employee.

10. EIDL applications are received in cloud-based platforms. The location of the server through which the EIDL application is submitted is based on the date the application was processed by SBA and the application number. All EIDL applications were either received through the DCMS 2.0 servers located in Quincy, Washington, or in a Microsoft cloud-based platform using a Rapid Finance application, through SBA servers located in Des Moines, Iowa.

## Scheme To Defraud

11. The allegations in Paragraphs 1 through 10 of this Information are incorporated as though realleged herein.

12. Beginning on or about June 19, 2020, and continuing through at least April 26, 2021, in the Southern District of Georgia and elsewhere, BAUSLEY knowingly devised and intended to devise a scheme to defraud, and to obtain money and property, in connection with applications for PPP and EIDL funds, by means of materially false and fraudulent pretenses, representations, and promises.

13. The object of the scheme was to unjustly enrich herself by obtaining PPP and EIDL funds under materially false and misleading pretenses, including by making false statements in loan applications submitted to the SBA.

### Manner and Means

It was part of the scheme that:

14. BAUSLEY entered false information into online EIDL and PPP applications in an effort to obtain loans from the SBA and a financial institution pursuant to the CARES Act.

### EIDL Application No. 3305374468

15. On or about June 19, 2020, BAUSLEY submitted to the SBA via the interstate wires a false and fraudulent EIDL application in the name of "KAMEKA BAUSLEY," a "catering" sole proprietorship. In the application, BAUSLEY falsely and fraudulently claimed her sole proprietorship's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020, were $157,923.00 and $55,619.00. BAUSLEY fabricated these numbers to mislead the SBA. BAUSLEY indicated in the application that her catering sole proprietorship, located in Augusta, Georgia, was established on February 5, 2018, and she owned the business since that date. BAUSLEY also requested an EIDL "advance" of $10,000. BAUSLEY certified that the information in the application was true and correct to the best of her knowledge, under penalty of perjury and of other criminal penalties for false information. The representations and certifications she made regarding gross revenues and cost of goods sold were materially false and fraudulent.

16. As a result of the fraud and relying on the materially false and fraudulent representations and certifications BAUSLEY made, on or about June 23, 2020, the SBA sent via interstate wire a $10,000 EIDL "advance" to BAUSLEY's checking account.

17. As a result of the fraud and relying on the materially false and fraudulent representations and certifications BAUSLEY made, SBA approved the requested EIDL. On or about June 23, 2020, the SBA transmitted $41,200.00 via the interstate wires to BAUSLEY's checking account.

**PPP Loan No. 5835788808**

18. On or about April 16, 2021, BAUSLEY submitted via the interstate wires a false and fraudulent PPP application (loan number 5835788808) to the SBA in the name of "KAMEKA BAUSLEY."

19. BAUSLEY falsely and fraudulently stated in the application for PPP loan number 5835788808 that she was the sole proprietor of a transportation business established on January 1, 2019, whose gross income in 2019 was $109,245. In support of her application, BAUSLEY electronically submitted a false and fraudulent IRS Form 1040 Schedule C (Profit or Loss from Business). BAUSLEY falsely certified that all information and documentation provided in her application was truthful and accurate, under criminal penalties. Based on that information, BAUSLEY requested a PPP loan.

20. PPP Loan number 5835788808 was handled by a financial institution (hereinafter, "BC") in Florida, on a delegated basis from the SBA. BC submitted

disbursement details for this loan into the SBA E-Tran System located in Sterling, Virginia.

21. On or about April 26, 2021, as a result of the fraudulent scheme described above, and based on the materially false and fraudulent information supplied by BAUSLEY, BC disbursed $20,833.00 into BAUSLEY's checking account.

## COUNT ONE
*Wire Fraud*
18 U.S.C. § 1343

22. The allegations in Paragraph 1 through 21 of this Information are incorporated as though realleged herein.

### Execution of the Scheme

23. On or about June 19, 2020, in the Southern District of Georgia, and elsewhere, BAUSLEY, for the purpose of executing and attempting to execute the scheme described above, caused to be transmitted by means of wire communication in interstate commerce, signs, signals and sounds, to wit: EIDL Application (3305374468) sent via interstate wire from within the State of Georgia to SBA outside the State of Georgia.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATION

The allegations contained in Count One of this Information are hereby re-alleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Sections 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

Upon conviction of the offense in violation of Title 18, United States Code, Section 1343 set forth in Count One of this Information, Defendant BAUSLEY shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of such violation.

If any of the property described above, as a result of any act or commission of the defendant:

   a. cannot be located upon the exercise of due diligence;
   b. has been transferred or sold to, or deposited with, a third party;
   c. has been placed beyond the jurisdiction of the court;
   d. has been substantially diminished in value; or
   e. has been commingled with other property which cannot be divided without difficulty,

the United States of America shall be entitled to forfeiture of substitute property pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

_Matthew A Josephson_
Matthew A Josephson
Assistant United States Attorney
Deputy Chief, Criminal Division

_George J.C. Jacobs, III_
George J.C. Jacobs, III
Assistant United States Attorney
*Lead Counsel